**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **No. 1:12-cr-00310-1** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **AUGUST RANALLI,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the Court is Defendant August Ranalli's motion to sever and to partially dismiss Counts One and Two in the above-captioned action, which is currently set for trial on June 2, 2014. (Doc. No. 183.) For the reasons that follow, the Court will deny Defendant's motion.

## I. BACKGROUND

This case arises out of an investigation between August 2011 and March 2013 by the Pennsylvania State Police, the York County Drug Task Force, and the Federal Bureau of Investigation into heroin, cocaine, and crack cocaine distribution in York, Pennsylvania, and centered on the activities of the Latin Kings, a street gang with expected ties to drug trafficking. (Doc. No. 195 at 2.) As part of the investigation, law enforcement conducted approximately forty controlled purchases or seizures of drugs from Defendant and his seven co-Defendants.[1] (Id. at 3.)

During the course of the investigation, informants provided police and law enforcement with multiple accounts of Defendant's involvement in selling and trafficking controlled substances, including cocaine base and crack cocaine, with co-Defendants. (Id. at 6-7.) These

[1] The seven co-Defendants are: Marcus Garcia, David Ramsey, Antonio Navarro-Garcia, Brandon Jones, Michael Enriquez, Daniel Pacheco-Morales and Carlos Martinez-Villalongo. (Doc. No. 22.)

accounts include descriptions of Defendant's presence during alleged drug sales and hand-to-hand transactions between Defendant and various co-Defendants prior to delivery of the drugs. (Id.) In addition to this information, officers directly purchased cocaine base from Defendant on three separate occasions in October and November 2012. (Id. at 8.) On November 28, 2012, an informant again arranged to purchase crack cocaine from Defendant. (Id.) When he arrived at the scheduled meeting, police arrested Defendant and recovered cocaine base. (Id.) Police subsequently searched Defendant's residence, where they found a variety of documents concerning the Latin Kings street gang. (Id.)

On December 12, 2012, a grand jury indicted Defendant on charges of distribution and possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a). (Doc. No. 1.) A grand jury issued a two-count superseding indictment on April 17, 2013, charging Defendant and his seven co-Defendants with distribution and conspiracy to distribute cocaine, heroin and cocaine base in violation of 21 U.S.C. §§ 846 and 841(a). (Doc. No. 22.) The government alleges that Defendant was a member of the Latin Kings known as "King Essence," and was a source of crack cocaine for the Sunrise Chapter of the Latin Kings in York, Pennsylvania. (Doc. No. 195 at 3.) The government also intends to introduce evidence showing that the Latin Kings sold heroin, cocaine and cocaine base as part of an ongoing criminal conspiracy. (Id.) On January 17, 2014, Defendant filed a motion to sever his trial from his co-Defendants and to partially dismiss Counts One and Two of the superceding indictment. (Doc. No. 183.) The motion has been fully briefed and is ripe for disposition.

**II. DISCUSSION**

Defendant first asks the Court to sever his trial from his co-Defendants. (Doc. No. 183.)

Specifically, he contends he would be substantially prejudiced in proceeding to trial with the others because he does not believe the government has the evidence to support the charge that he conspired with the co-Defendants to sell heroin. (Id. at 1-2.) Secondly, Defendant asks the Court to partially dismiss Counts One and Two of the superseding indictment as they relate to 280 grams of cocaine base because Defendant was entrapped as a matter of law. (Id. at 2-3.) The Court will address these arguments in turn.

**A. Motion to sever**

Defendant asks the Court to sever his trial from his co-Defendants because he contends there is a risk of substantial prejudice if they are tried together. (Doc. No. 183 at 1-2.) Specifically, he asserts that, although he is charged with conspiracy to distribute heroin, crack cocaine and cocaine base, he has no personal knowledge of any heroin sales. (Doc. No. 193 at 1-4.) Moreover, he asserts that the government does not have evidence to substantiate the heroin element of the charge. (Id.) The government opposes Defendant's motion and contends that there is no substantial prejudice or risk of prejudicial spillover if all Defendants are tried together. (Doc. No. 195 at 9-14.)

Federal Rule of Criminal Procedure 14(a) provides: "If the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts . . . or provide any other relief that justice requires." Fed.R.Crim.P. 14(a). Under Rule 14, a defendant bears a "heavy burden in gaining severance." United States v. Quintero, 38 F.3d 1317, 1343 (3d Cir. 1994). The defendant must "pinpoint clear and substantial prejudice resulting in an unfair trial." United States v. Riley, 621 F.3d 312, 335 (3d Cir. 2010). A motion to sever under Rule 14 should only be granted "if there is a serious risk that a joint trial would

compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). A defendant is not entitled to severance solely because he may have a better chance of acquittal in separate trials. See United States v. McGlory, 968 F.2d 309, 340 (3d Cir. 1992). The question of prejudice hinges on whether a jury can "compartmentalize" the evidence as it relates to each separate count, considering the volume of evidence and limited admissibility. See United States v. Davis, 397 F.3d 173, 182 (3d Cir. 2005). Once a defendant has met his burden of demonstrating prejudice, the Court may exercise its discretion to grant the motion to sever after "balanc[ing] the potential prejudice to the defendant against the advantages of joinder in terms of judicial economy." United States v. Sandini, 888 F.2d 300, 305 (3d Cir. 1989). Because Rule 14 is discretionary, it does not necessarily require severance even when prejudice is shown. United States v. Saferstein, No. 07-557, 2009 WL 1046128, at *5 (E.D. Pa. Apr. 17, 2009).

First, the Court finds that any prejudice to Defendant is minimal. His motion appears to be premised on the theory that the Government's evidence that he sold heroin is much weaker against him than against any of his co-Defendants, and he would therefore be prejudiced by the presentation of evidence at trial that his co-Defendants sold heroin. (Doc. No. 193 at 1-4.) However, variation in the quantity of evidence as to individual co-Defendants is not grounds for severance. See United States v. Eufrasio, 935 F.2d 553, 568 (3d Cir. 1991) ("Neither a disparity in evidence, nor introducing evidence more damaging to one defendant than others entitles seemingly less culpable defendants to severance.").

Moreover, because Defendant and his co-Defendants are alleged to be part of the same

conspiracy, and because acts committed by one co-conspirator in furtherance of the conspiracy are admissible against other co-conspirators, even were the Court to grant Defendant's motion to sever his trial, the evidence in question would still be admissible against him. See United States v. Hart, 273 F.3d 363, 370 (3d Cir. 2001). Thus, Defendant's claim that he will suffer prejudice unless the Court grants him a severed trial is unavailing. See United States v. DeLuca, 137 F.3d 24, 36 (1st Cir. 1998) ("[S]ince any evidentiary spillover is vitiated where the evidence in all events would have been admissible against the movant, in the context of conspiracy, severance will rarely, if ever, be required."). Finally, the Court finds no reason to believe that a jury will be unable to compartmentalize the evidence against Defendant, or that the Court will be unable to issue instructions in that regard. See United States v. Williams, No. 06-719-5, 2009 WL 1285519, at *2 (E.D. Pa. May 7, 2009) "[The Court] can ensure [Defendant] will receive a fair trial because it will issue jury instructions directing the jury to consider the evidence separately as to each defendant and each count."); United States v. Saferstein, No. 07-557, 2009 WL 1046128, at *5 (E.D. Pa. Apr. 17, 2009) ("[Defendant's argument] that severance is necessary since a jury will have a difficult time separating or ascertaining which evidence against him is meant to prove which set of charges is also overcome, since the Court is in a position to evaluate each situation should any occur and to respond appropriately with limiting instructions at trial, if necessary.").

Further, the Court finds that the preference for judicial economy is compelling and weighs against severance. "There is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro, 506 U.S. at 537. This preference for joinder "promote[s] efficiency and serve[s] the interest of justice by avoiding the scandal and inequity of

inconsistent verdicts." Id. at 537 (quoting Richardson v. Marsh, 481 U.S. 200, 210 (1987)). Additionally, because this is a conspiracy case, evidence in furtherance of the conspiracy is admissible against Defendant regardless of severance. Therefore, granting Defendant's's request would result in the Court essentially repeating the same trial, which runs counter to established principles of judicial economy. See Eufrasio, 935 F.2d at 568–69 ("The public interest in judicial economy favors joint trials where the same evidence would be presented at separate trials of defendants charged with a single conspiracy."); United States v. Lacerda, No. 12-303, 2013 WL 3177814, at *7 (D.N.J. June 19, 2013) (noting that "separate trials with respect to the same charged conspiracy would be a significant waste of judicial time and resources because participants in a conspiracy should ordinarily be tried together, even if the evidence against one is more damaging than it is against another").

Finally, although Defendant requests a hearing to resolve the motion, the Court finds a hearing unnecessary. Even were Defendant able to establish a factual basis for his contention that the Government's case against him regarding heroin is weaker than its case against his co-Defendants, the aforementioned case law does not support severance under these circumstances, and the Court will deny Defendant's motion to sever.

**B. Motion to partially dismiss indictment**

Defendant also contends that he is entitled to have the portions of the indictment charging him with offenses involving cocaine base violations dismissed, because he was entrapped by the government as a matter of law, and Defendant requests a hearing on the matter. (Doc. No. 193 at 4-6.) The government argues that entrapment is a question for the jury, and that Defendant has presented no colorable due process defense. (Doc. No. 195 at 14-18.)

Entrapment is a "relatively limited defense that may defeat a prosecution only when the Government's deception actually implants the criminal design in the mind of the defendant." United States v. Wright, 921 F.2d 42, 45 (3d Cir. 1990) (internal citations and quotations omitted). A valid entrapment defense has two elements: (1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to engage in the criminal conduct. Id. (citing Mathews v. United States, 485 U.S. 58, 63 (1988)). The defendant has the burden of producing evidence of both elements. Id. Once a defendant has done so, "the government then has the burden of proving beyond a reasonable doubt that it did not entrap the defendant." Id.

Entrapment is generally a question for the jury, although the trial court must evaluate the quantum of evidence presented on each element to determine whether an entrapment jury instruction is warranted as a matter of law. United States v. Fedroff, 874 F.2d 178, 181-82 (3d Cir. 1989). Generally, the entrapment defense centers on the evidence adduced to meet the burden for the "non-predisposition" prong. Wright, 921 F.2d at 45. "The entrapment defense theorizes that an individual not otherwise predisposed to criminal conduct was corrupted by some inducement on the part of the law enforcement officer. Thus, the focus is on the intent or predisposition of the defendant to commit the crime." Id. As entrapment is generally a jury question, the determination of whether a defendant has met his burden of production with respect to an entrapment defense is typically reserved until after a full hearing of the evidence at trial. United States v. Smith, No. 10-0083, 2010 WL 4865479, at *2 (D.N.J. Nov. 16, 2010) (citing Mathews, 485 U.S. at 63).

The Court finds no reason to address the entrapment issue prior to trial. Defendant avers

that an individual hired by the government induced him to sell crack cocaine by repeatedly urging him to do so, despite Defendant's lack of predisposition to sell the drug. (Doc. No. 183 at 1-2.) The government counters that it intends to present evidence of predisposition, including prior drug convictions and membership in the Latin Kings street gang, known for controlled substance distribution. (Doc. No. 195 at 15-18.) Defendant's entrapment defense turns on the question of intent, and the law is clear that an entrapment defense is best suited for disposition at a jury trial. See Wright, 921 F.2d at 44. Thus, the Court will decline Defendant's invitation to address the merits of his affirmative entrapment defense at this time. See United States v. Akins, No. 05-350, 2006 WL 1618641, at *5 (W.D. Pa. June 8, 2006) (denying a motion to dismiss an indictment on the grounds of entrapment as "premature," and noting that "Defendant may attempt to demonstrate the propriety of an instruction on entrapment at trial"). See also United States v. Russell, 411 U.S. 423, 435 (1973) (observing that entrapment is not rooted in any authority of the Judicial Branch to dismiss prosecutions for what it feels to have been "overzealous law enforcement").

However, although Defendant does not directly raise this argument, it is true that an indictment may be dismissed where "the government's conduct was so outrageous or shocking that it amounted to a due process violation." United States v. Christie, 624 F.3d 558, 573 (3d Cir. 2010). Although this defense is "often invoked by defendants, [it] is rarely applied by courts." United States v. Voigt, 89 F.3d 1050, 1065 (3d Cir. 1996) (citations omitted). It is generally "reserved for only the most egregious circumstances." United States v. Mosley, 965 F.2d 906, 910 (3d Cir. 1992). "[T]he challenged conduct must be shocking, outrageous, and clearly intolerable," thus "violat[ing] our sense of fundamental fairness or shock[ing] the

universal sense of justice." United States v. Pitt, 193 F.3d 751, 761–762 (3d Cir. 1999) (citing United States v. Russell, 411 U.S. 423, 432 (1973)). "[W]e repeatedly have noted that we are extremely hesitant to find law enforcement conduct so offensive that it violates the Due Process Clause." United States v. Hoffecker, 530 F.3d 137, 154 (3d Cir. 2008) (internal citations and quotations omitted). "To the extent a government misconduct defense distinct from entrapment is available, it must be predicated on intolerable government conduct which goes beyond that necessary to sustain an entrapment defense." United States v. Driscoll, 852 F.2d 84, 86 (3d Cir. 1988) (emphasis added).

In his motion, Defendant does not allege shocking behavior by the government that violated his due process or present a colorable basis for such a claim. Rather, he alleges the elements of his entrapment claim: that he was not predisposed to sell crack cocaine but, at the repeated urging of a government agent, he reluctantly complied, and was entrapped as a matter of law. (Doc. No. 183 at 1-2.) Entrapment is distinct from a due process defense. See United States v. Engler, 806 F.2d 425, 429 (3d Cir. 1986) ("To the extent that [Defendant] contends the government's actions harmed him, his allegations are merely duplicative of his entrapment defense contentions. Such allegations may not provide an independent basis for a defense or acquittal."); United States v. Jannotti, 673 F.2d 578, 608 (3d Cir. 1982) ("We must be careful not to undermine the Court's consistent rejection of the objective test of entrapment by permitting it to reemerge cloaked as a due process defense."). Even assuming, arguendo, Defendant was not predisposed to sell the drugs and was induced through repeated urging, this allegation of entrapment does not meet the standard necessary for a due process violation under relevant case law. See United States v. Twigg, 588 F.2d 373, 379-382 (3d Cir. 1978) (finding

police involvement sufficiently outrageous to constitute violation of due process where police provided a laboratory, chemicals, tools and technical expertise for manufacture of illegal drugs); United States v. Mosley, 965 F.2d 906, 910 (10th Cir. 1992) ("The cases make it clear that this is an extraordinary defense reserved for only the most egregious circumstances. It is not to be invoked each time the government acts deceptively or participates in a crime that it is investigating. Nor is it intended merely as a device to circumvent the predisposition test in the entrapment defense."). Therefore, while Defendant is free to pursue his entrapment defense at trial, the Court finds no basis for a pre-trial dismissal of the indictment, and will deny the motion.

## III. CONCLUSION

The Court finds that no substantial prejudice will result if Defendant proceeds to trial with his co-Defendants and will therefore deny the motion to sever. The Court further finds that there is no basis to adjudicate Defendant's anticipated entrapment defense at this time, and he may proceed on the theory when trial commences. An order consistent with this memorandum follows.